*10 CV 1410 comp*

United States District Court
District of Connecticut
FILED AT   HARTFORD

9/3 20 10
Roberta D. Tabora, Clerk
By M. Ruocco
Deputy Clerk

## UNITED STATES DISTRICT COURT

### DISTRICT OF CONNECTICUT

AH MIN HOLDING LLC                          Civil No.

     Plaintiff,

v.                                          # 310CV 1410

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT;
SHAUN DONOVAN, SECRETARY OF THE
UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT; and
THE MARCUS LAW FIRM                         SEPTEMBER 3, 2010

     Defendants.

---

### VERIFIED COMPLAINT

    Plaintiff, Ah Min Holding LLC, by its undersigned attorneys, brings this action

against the United States Department of Housing and Urban Development, Shaun Do-

novan, in his capacity as the Secretary of the United States Department of Housing and

Urban Development, and The Marcus Law Firm in its capacity as foreclosure commis-

sioner (hereinafter collectively the "Defendants"), as follows:

## PARTIES

1.      The Plaintiff, Ah Min Holding LLC ("Ah Min Holding" or "Plaintiff"), is a

Connecticut limited liability company with an address at 30 Spicer Road, Preston,

Connecticut and an address at 587 Beck Street, Bronx, New York.

2.      The Defendant, the United States Department of Housing and Urban

Development ( "HUD"), is an executive agency of the United States Federal Govern-

ment established pursuant to 42 U.S.C. § 3532.

3.      The Defendant, Shaun Donovan, is the HUD Secretary (the "Secre-

tary"), upon information and belief, sworn in as such on January 26, 2009.

4.      The Defendant, The Marcus Law Firm (the "Foreclosure Commissioner"),

is a law firm with a business address at 111 Whitney Avenue, New Haven, Connecticut

and 275 Branford Road, North Branford, Connecticut 06471.  On or about January 26,

2007, The Marcus Law Firm was designated as the Foreclosure Commissioner and

agent of HUD for the purpose of conducting a nonjudicial foreclosure of a mortgage on

property located at 1713 Main Street, Hartford, Connecticut[1] (hereinafter referred to as

---

[1] The property in question is comprised of 25 buildings of approximately 150 Section 8 rental units located through-
out Hartford but primarily in the neighborhood known as Clay Hill.

2

"Clay Hill Apartments" or as the "Property").

## JURISDICTION and VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. §1331, which states: "The district courts shall have original jurisdiction of

all civil actions arising under the Constitution, laws, or treaties of the United States.  As

pled more fully below, the Plaintiff seeks orders based on this Court's interpretation of

federal legislation, including 12 U.S.C. § 3701 et seq., the Multi Family Mortgage Forec-

losure Act (the "MMFA") and the Federal Regulations enacted in accordance therewith.

Further, this Court has jurisdiction pursuant to 28 U.S.C. § 1361, since this action also

seeks a mandamus to compel HUD, the Secretary, and the Foreclosure Commissioner,

as HUD's agent, to act in accordance with the MMFA and applicable Regulations.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b), since, inter alia, the

Property involved in the foreclosure sale at issue is located in this District and the Plain-

tiff is a domestic limited liability company residing within this District.

## NATURE OF THE CASE/FACTUAL BACKGROUND

7.      This action arises from a dispute with regard to the interpretation of certain

provisions of the MMFA and the federal regulations enacted pursuant thereto, 24 C.F.R.

§ 27.1 et seq. (the "Regulations"), and the Foreclosure Commissioner's failure to: (A) fol-

3

low the provisions of the MMFA. More specifically, the Foreclosure Commissioner failed to serve notice of default and foreclosure sale to "all persons holding liens of record upon the security property" in accordance with §3708(1)(c) of the MMFA; and/or (B) dispose of the sale proceeds from the proposed nonjudicial foreclosure sale in accordance with §3712 of the MMFA. The former failure will likely cause an impairment or "cloud" the title transferred to the Plaintiff. The latter failure will likely subject the Plaintiff to a situation where it is forced to pay lien claimants with recorded interests secured by the Property where the sale proceeds paid by Plaintiff at closing should be used to dispose or satisfy such claimants, thereby subjecting Plaintiff to further liability. Due to the aforementioned conduct of the Foreclosure Commissioner, the Plaintiff will likely sustain damages and irreparable harm, especially where the Property that the Plaintiff seeks to purchase is unique.

8.     On or about December 14, 1982, a mortgage deed was executed by Clay Hill Associates Limited Partnership in favor of the State of Connecticut, Department of Housing n/k/a the State of Connecticut Department of Economic and Community Development with respect to the Property (the "Mortgage"). The Mortgage was assigned to the HUD Secretary on or about November 14, 2005.

9.     Due to a default of the covenants and conditions of the Mortgage, the Sec-

4

retary designated the Foreclosure Commissioner to conduct a nonjudicial foreclosure of the Mortgage pursuant to the MMFA.

10. On or about September 27, 2009, the Foreclosure Commissioner sent a Notice of Default and Foreclosure Sale to the owner of the Property. The Property was offered for sale by HUD pursuant to the nonjudicial foreclosure procedures of the MMFA on two prior occasions in 2006 and 2007. The Plaintiff was the successful bidder on these two prior occasions as well. However, despite the award to the Plaintiff, HUD decided not to proceed to closing on either the 2006 or 2007 nonjudicial foreclosures.

11. In 2009, the Property was again offered for sale pursuant to the nonjudicial foreclosure sale procedure of the MMFA and an invitation to bid package, amended August 26, 2009.

12. The Plaintiff, Ah Min Holding, was the successful bidder at the third foreclosure sale, which occurred on October 21, 2009. At or about that time, Ah Min Holding executed a document entitled "Terms and Requirements of Foreclosure Sale – Acknowledgement by Bidder" (the "Purchase Agreement"), a true and accurate copy of which is attached hereto as Exhibit A and incorporated herein. The Plaintiff agreed to pay $2,400,000.00 to purchase the Property. The Purchase Agreement calls for a deposit of

5

$150,000.00 which Plaintiff also paid.

13.     Subsequent to the Plaintiff's execution of the Purchase Agreement, but prior to the first scheduled closing date, there was a fire at the Property. Rather than allowing a credit or discount to the purchase price or permitting the Plaintiff to terminate in accordance with the Purchase Agreement, HUD permitted the damage to be repaired. The damage sustained to the Property was partially remedied by HUD, but not satisfactorily, resulting in negotiations between HUD and the Plaintiff regarding the extent of further remedial work required and the cost thereof. The issues relating to the fire damage were resolved in about June 2010.

14.     In August 2010, HUD and Ah Min Holding agreed to an extension of the time to close through August 31, 2010, which obligated Plaintiff to pay an extension fee of $137,925.00 to HUD. HUD later agreed to an extension of the deadline to close on or before September 3, 2010.

15.     The Plaintiff advised the Defendants of incorrect or inaccurate information in the post-closing repair obligation that was included in the bid package from HUD since the information HUD used for the bid package was over two years old. Initially HUD refused to do anything about modifying the terms until two weeks into the paid extension

6

period but only if Plaintiff agreed to pay for the reinspection of the improvements. The inspection report verified that HUD's information was inaccurate (thereby making the bid package inaccurate). Despite HUD's mistake it refused to reimburse Plaintiff for the inspection fee or its extension fee.

16.     On or about July 27, 2010, a mechanic's lien was recorded on the land records of the Property in the amount of $121,652.00. Despite the fact that closing has not occurred, the Defendants' position is that the Plaintiff is responsible for satisfying this lien, and, if the Plaintiff does not satisfy the lien, the Plaintiff will take title subject to the lien, because HUD will not resolve the lien.

17.     The Property has been assessed local property taxes by the City of Hartford. There are delinquent taxes to the City of Hartford. There are tax liens of approximately $271,000, some of which have been assigned by the City to another entity for collection (the "City Liens").   Under 12 U.S.C. § 3712, HUD is required to satisfy certain liens, including the City Liens, from the proceeds of the sale of the Property at closing.

18.     In addition, sidewalk liens and liens for water use charges have been recorded on the Property. HUD refuses to pay these liens out of the Plaintiff's purchase

7

price at closing and which HUD contends will remain an obligation of the Plaintiff when title passes to it (collectively referred to with the aforementioned liens as the "Liens"), despite HUD's obligation to satisfy these liens pursuant to the MMFA.

19.     Since the date of the nonjudicial foreclosure sale, HUD has neglected or refused to make any payments for taxes assessed against the Property or towards principal and interest on the mortgage.    Meanwhile, HUD continues to deliver the tenants' section 8 payments for this Property to the property manager and has not appointed a receiver.

**FIRST COUNT:  (Temporary and Permanent Injunction)**

1-19.  Paragraphs 1 through 19 as stated herein above are incorporated and re-alleged as Paragraphs 1 through 19 of this First Count as if more fully contained herein.

20.     The Foreclosure Commissioner is mandated to effectuate a nonjudicial sale pursuant to the process included in the MMFA.

21.     Pursuant to 12 U.S.C. § 3708(1)(C) "all persons holding liens of record upon the security property, as the record exists forty-five days prior to the date originally set for foreclosure sale" must be sent by mail the notice of default and foreclosure sale at least 10 days prior to the nonjudicial foreclosure sale.

8

22.     In an email dated September 2, 2010, in contravention of the MMFA, the Foreclosure Commissioner stated "I don't notice prior encumbrances so they weren't noticed."

23.     The Plaintiff, through its counsel, has notified HUD and its Foreclosure Commissioner of its position as to the proper disposition of the sale proceeds to be paid by the Plaintiff to HUD at closing. It is the Plaintiff's position the nonjudicial foreclosure sale proceeds should be disbursed pursuant to 12 U.S.C. § 3712, which provides that the sale proceeds shall be used, after the payment of costs of the foreclosure "then to pay any valid tax liens or assessments prior to the mortgage." This should be inter-preted to mandate the use the Plaintiff's purchase price to pay the local property taxes assessed against the property, in full, because such local property taxes are prior in right to the mortgage. Other provisions of said statute should provide for the satisfac-tion of the other Liens from the sale proceeds paid by the Plaintiff at closing to HUD. HUD's position appears to be that such Liens will not be paid from the proceeds and will remain the liability of the Plaintiff after closing despite the plain language of the statute.

24.     The Defendants have indicated that they expect Plaintiff to close on the purchase of the Property on September 3, 2010. They will not provide an extension of time to resolve the parties' disputes. If the Plaintiff proceeds with the purchase of the

9

Property under these circumstances, the funds paid to HUD would not be used by HUD to satisfy the Liens.

25.    If the Plaintiff proceeds with the purchase of the Property, its ownership will immediately be subject to foreclosure and collection actions by virtue of the substantial monetary liens, which will jeopardize its ownership or obligate the Plaintiff to satisfy the Liens to avoid such unwarranted actions.

26.    The Foreclosure Commissioner's failure to provide proper notice to record lienholders pursuant to the MMFA deprived the record lienholders of the opportunity to resolve their claims prior to foreclosure.

27.    In the event the Plaintiff, in these circumstances, refuses to close, it will suffer an irreparable injury without judicial intervention, including the loss of its $150,000 deposit, the loss of the $137,925 fee it paid for the extension as well as the opportunity to purchase, own, operate, and manage the Property.

28.    Because HUD is immune or may be immune from a suit for monetary damages and because of the uniqueness of the Property, the Plaintiff also has no adequate remedy at law with respect to its potential recovery of the sums it has paid related to the Property.

10

29.    The Plaintiff will likely prevail on the merits of this case where the plain language of the MMFA supports its positions as to the proper notice requirements and the disposition of the sale proceeds paid at closing to HUD to satisfy lienors.

30.    Under these circumstances, the balance of the equities favors the issuance of an injunction in favor of the Plaintiff. Since 2006, the Plaintiff has invested substantial sums of money related to its attempts to purchase the Property, and the interpretation of the proper disposition of the proceeds of the sale by HUD is imperative prior to closing. The Plaintiff is in substantial compliance with its obligations under the Purchase Agreement; has reasonably relied upon the Foreclosure Commissioner abiding by the provisions of the MMFA; and has a reasonable expectation that the sale proceeds paid by Plaintiff to HUD at closing will be disbursed in accordance with the MMFA. Without this injunction, the Plaintiff may be forced to purchase the Property subject itself to claims from parties entitled to notice and remain liable for the Liens that appear subject to payment from the sale proceeds. Alternatively, the Plaintiffs can choose not to purchase the Property but suffer loss of money, time and opportunity. Conversely, HUD will sustain minimal, if any, harm from an order to delay closing.

11

## SECOND COUNT: (Declaratory Judgment)

1-30. Paragraphs 1 through 30 of the First Count are incorporated and re-alleged as Paragraphs 1 through 30 of this Second Count as if more fully contained herein.

31. A substantial controversy exists between the Plaintiff and HUD, the Secretary, and/or the Foreclosure Commissioner with respect to, *inter alia*, the interpretation of 12 U.S.C. § 3708 ("Notice of Default") and 12 U.S.C. § 3712 ("Disposition of sale proceeds") of the MMFA.

32. A declaratory judgment is necessary to provide a determination of the proper interpretation of said statute, which will provide the parties with the legal and appropriate method of addressing the lack of notice to certain lienholders that may or may not be affected by this nonjudicial foreclosure and the proper disbursement of the sale proceeds relating to the Plaintiff's purchase of the Property, more specifically, whether the proceeds from the Plaintiff should be used to pay off certain liens. This determination should be made prior to obligating the Plaintiff to close on the Property.

12

## THIRD COUNT: (Mandamus)

1-32. Paragraphs 1 through 32 of the Second Count are incorporated and re-alleged as Paragraphs 1 through 32 of this Third Count as if more fully contained herein.

33. In accordance with the MMFA, including 12 U.S.C. §§ 3708 and 3712, the Plaintiff, as the successful bidder and purchaser of the Property pursuant to the non-judicial foreclosure, has a clear legal right with respect to the performance of the Defendants' obligations in accord with the MMFA, including the notification of the foreclosure sale to record lienholders and, at closing, to the proper disbursement of the sale proceeds and satisfaction of liens.

34. The obligations or duties of the Defendants are defined by the express language of the MMFA.

35. Because HUD is immune or may be immune from a suit for monetary damages and because of the uniqueness of the Property, the Plaintiff also has no adequate remedy at law with respect to its potential recovery of the sums it has paid related to the Property.

36. The Plaintiff seeks a writ of mandamus pursuant to 28 U.S.C. § 1361.

13

**WHEREFORE,** the PLAINTIFF claims:

1.    A temporary and permanent injunction pursuant to the First Count
      ordering:
      a. Enjoining the Defendants from cancelling or otherwise terminating the
         Purchase Agreement between HUD and the Plaintiff regarding Ah Min
         Holding's purchase of the Property until the issuance of an order from
         this Court;
      b. Enjoining the Defendants from offering the Property for sale to any
         individual or entity other than the Plaintiff until the issuance of an order
         from this Court;
      c. Enjoining the Defendants from entering into an agreement for the sale
         of the Property to another individual or entity until order of this Court;

2.    A declaratory judgment pursuant to the Second Count declaring that
      lienholders be paid out of the proceeds of the purchase price.

3.    An order of mandamus that the Defendants shall:
      a. Not cancel or otherwise terminate the Purchase Agreement between
         HUD and the Plaintiff regarding Ah Min Holding's purchase of the
         Property until the issuance of an order from this Court;
      b. Not offer the Property for sale to another individual or entity until order
         of this Court permitting the same;
      c. Not enter into an agreement for the sale of the Property to another
         individual or entity until order of this Court permitting the same;

4.    Such other and further relief as in law or equity may apply.

14

Respectfully submitted,

PLAINTIFF,
AH MIN HOLDING LLC

By: _____

John W. Bradley, Jr. ct05418
jbradley@rms-law.com
Brian C. Courtney, Esq.ct02279
bcourtney@rms-law.com
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103-3101
860-549-1000
860-724-3921 (fax)

15

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

AH MIN HOLDING LLC                                    Civil No.

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT;
SHAUN DONOVAN, SECRETARY OF THE
UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT; and
THE MARCUS LAW FIRM                                   SEPTEMBER 2, 2010

      Defendants.

## PLAINTIFF'S VERIFICATION

The undersigned, being duly sworn, states as follows:

I, Emmanuel Ku, managing member of Ah Min Holding LLC, being duly autho-

rized to act on behalf of such limited liability company, and being over 18 years of age

and believing in the obligations of an oath, state that I am thoroughly familiar with the

facts contained in the Verified Complaint and that the facts pled therein are true to the

best of my knowledge and belief.

                                          Emmanuel Ku, Manager
                                          Ah Min Holding LLC
                                          Duly Authorized

# EXHIBIT A

**ATTACHMENT B**

TERMS AND REQUIREMENTS OF FORECLOSURE SALE - ACKNOWLEDGMENT BY BIDDER

PART I

BID PRICE: The Undersigned, _(member)_ _(m m á n q e | l=y)||_ AH MIN.HOUSING, LLC ("High Bidder") submits a bid of _Two Million Four Hundred Thousand and 00/00_ dollars ($_2,400,000.00_   ) at the foreclosure sale of Clay Hill Apartments ("Project"), the legal description of which is included as Exhibit A, to be paid as follows:

1. $150,000 in the form of a money order, certified funds or a cashier's check, as the Earnest Money Deposit, which has been paid at the foreclosure sale to the Foreclosure Commissioner, and which shall not earn interest, and

2. $ _2,250,000.00_ _____ the balance of the sales price to be paid by the High Bidder at the closing ("Closing"), in the form of a money order, certified funds or a cashier's check in accordance with this Terms and Requirements of Foreclosure Sale - Acknowledgment by Bidder ("Acknowledgment by Bidder"). The Closing will be held at a place, date and time established in accordance with Part II, Section 5 below.

3. In addition to the above, the High Bidder will be required to pay at Closing all closing costs, regardless of local custom, and, where applicable, deposits to reserve accounts and/or Letters of Credit as described in Riders, Use Agreement and other documents incorporated into this Invitation for Bid ("Invitation"), and the HAP Contract.

PART II

The High Bidder, by executing this document, acknowledges the following requirements as conditions of purchasing the Project:

1. ACKNOWLEDGMENT OF TERMS: – High Bidder affirms to have full knowledge of the all terms, conditions and requirements contained in this Invitation, including this Acknowledgment by Bidder and documents referred to herein and Attachments.

2. EXECUTION OF USE AGREEMENT: At Closing, High Bidder will, in addition to any other related documents, execute the Use Agreement and all of the Exhibits to the Use Agreement as contained in the Invitation. Such documents will control the use of the Project for a specified period, be recorded with the Deed, and run with the land.

3. CERTIFICATION OF SUBSTANTIAL COMPLIANCE (Attachment F): The High Bidder must provide a certification to HUD (**within two (2) Federal Government business days after the foreclosure auction sale**) that any other projects that are owned by the High Bidder or its affiliates that are located in the same jurisdiction as the Project are in substantial compliance with applicable State and local housing statutes, regulations, ordinances and codes. HUD may, in its discretion, verify the accuracy of such certification and request supporting documentation from the High Bidder. The complete and original Attachment F must be received by HUD Realty Specialist, Donald Winston - 4AHMLAU, HUD Atlanta MFPD Center, Five Points Plaza, 40 Marietta St., Atlanta, GA 30303-2806. If HUD determines, in its sole discretion, that such other projects are not in substantial compliance, HUD will have the right to refuse to sell the Project to the High Bidder and retain the Earnest Money Deposit.

4. PREVIOUS PARTICIPATION CERTIFICATION:
   **WITHIN TWO (2) FEDERAL GOVERNMENT BUSINESS DAYS AFTER FORECLOSURE SALE:**
   (a) High Bidder, if using **paper submittal** of the Previous Participation Certification (Form HUD-2530), must submit the form to HUD Realty Specialist, Donald Winston– 4AHMLAU, HUD Atlanta MFPD Center, Five Points Plaza, 40 Marietta St., Atlanta, GA 30303-2806 or via fax to 404-730-2440.
   (b) **Bidders not registered in APPS and Secure Systems:** A High Bidder choosing to file electronically must submit to HUD certification of registration in APPS and Secure Systems. The High Bidder must fax a copy of _Participant Successfully Registered_ page from the APPS System **and** a copy of the _Multifamily Coordinator and User Registration page_ from Secure Systems **or** a copy of the _Participant Detail_ page (see APPS User Guide-Industry, Chapter 15, pages 15-2 through 15-4 for printing instructions) to HUD Realty Specialist, Donald Winston, HUD Atlanta MFPD Center at (404) 730-2440. The High Bidder is also responsible for submitting any changes necessary for principals, tax ID numbers, and owners into the APPS System.
   (c) **For Participants Registered in APPS and Secure Systems:** High Bidder must fax a copy of the Participant Detail page to HUD Realty Specialist, Donald Winston, HUD Atlanta MFPD Center at (404) 730-2440.
   **WITHIN FIFTEEN (15) FEDERAL GOVERNMENT BUSINESS DAYS AFTER FORECLOSURE SALE:**
   (d) If using APPS, the High Bidder must submit certification to HUD that the High Bidder has completed the 2530 submission process for the ownership entity in APPS. This certification must be in the form of printed copy of the _2530 Submission Package_ (see APPS User Guide-Industry, Chapter 15, pages 15-2 through 15-4). The High Bidder must fax a copy of the _2530 Submission Package_ from APPS System to HUD Realty Specialist, Donald Winston, HUD Atlanta MFPD Center at (404) 730-2440.
      NOTE: _Any change in ownership entity will require changes (updating) in the APPS system. Participants (High Bidder) must adhere to all APPS registration and submission timeframes. Delays in updating the 2530 application will not be grounds for delaying any closing, nor will it be grounds for approving an extension of the closing date._

5. ESTABLISHMENT OF CLOSING DATE, TIME AND PLACE:
   (a) Time is of the essence.
   (b) HUD will notify the High Bidder and the Foreclosure Commissioner in writing after HUD determines that the High Bidder has been approved to purchase the Project. Approval to purchase is subject to review and approval of Bidders written statements and HUD forms as required for purchase in Section 4 (Post Foreclosure Sale Procedures) of the "Invitation to Bid", and in Attachment B, Terms and Requirements of Foreclosure Sale, Acknowledgement by Bidder, specifically Number 19 "ADDITIONAL FORMS AND STATEMENTS" as indicated. The Closing **shall be within thirty (30) days after such notification**, unless extended pursuant to Section 9 below.
   (c) The Foreclosure Commissioner will establish a time and date for the Closing. The Closing will take place at a site agreed upon by HUD and the Foreclosure Commissioner.
6. CLOSING, CLOSING EXPENSES AND TRANSFER OF POSSESSION:
   (a) The sale shall be effective upon Closing.
   (b) High Bidder/Purchaser shall pay all closing costs and expenses, excluding fees for recording the Deed and Use Agreement, irrespective of local custom. Recording fees shall be paid by HUD.
   (c) Transfer of title and possession of the Project shall become effective as of the Closing date.
7. PAYMENT OF PURCHASE PRICE AT CLOSING: The High Bidder/Purchaser shall pay the balance of the purchase price at Closing in the form of a money order, certified funds or a cashier's check made out to:
   **THE SECRETARY, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
8. **LIQUIDATED DAMAGES: Should the High Bidder/Purchaser fail or refuse to perform all obligations under the Invitation (which includes this Acknowledgement by Bidder) for any reason within the deadline referred to in Section 5 above, the Earnest Money Deposit and any extension fees, paid under Section 9, shall be retained by HUD as liquidated damages.**
9. EXTENSION FEES: The granting of extensions of time to close the sale is within HUD's sole and absolute discretion. Any extensions granted will be on the following conditions:
   (a) A written request for an extension must be received by the Foreclosure Commissioner at least seven (7) days prior to the Closing and **must be accompanied by the payment** of the required extension fees ("Extension Fees") in accordance with paragraph 9(c) below.  The request must state the reason for Purchaser's inability to timely close the sale.
   (b) Extensions shall be for thirty (30) day periods.
   (c) For each thirty (30) day period requested and approved by HUD, Extension Fees shall be equal to
       (i) **$30.65**, per unit, per day, which is **$4,597.50** daily for the Project, for a total cost of **$137,925** for the 30 day period, or
       (ii) one and one-half percent (1.5%) of the purchase price, whichever is greater.
   (d) The Extension Fees shall be retained by HUD and shall not be credited to the amount due from High Bidder/Purchaser at Closing.  However, if the sale closes prior to the expiration of an extension period, the prorated amount of the Extension Fees, for the unused portion of the extension period, shall be credited toward the amount due from the High Bidder/Purchaser at Closing.
   (e) The granting of one or more extensions shall not obligate HUD to grant additional extensions.
   (f) If any form or instrument required by HUD is not submitted within sufficient and reasonable time for HUD's review or processing and such delay necessitates an extension of the Closing deadline, Extension Fees must be paid for this period.
   (g) Extension Fees must be in the form of a money order, certified funds or a cashier's check payable to:
       **THE SECRETARY, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**.
10. BIDDER RESTRICTIONS:
    (a) No Member of/or Delegate to Congress, resident commissioner, or local elected official, shall be permitted to participate in any share or part of this sale, or to any benefit arising from it.  However, this provision does not apply to this sale to the extent that this sale is made to a corporation for the corporation's general benefit.
    (b) If the High Bidder is, or becomes suspended, debarred, or temporarily denied from participating in HUD programs prior to approval as the Purchaser of the Project, the sale to the High Bidder shall be cancelled.  In addition, if such suspension, debarment or temporary denial of participation occurs either before or after High Bidder's execution of this Acknowledgment by Bidder, the Earnest Money Deposit and any Extension Fees paid shall be retained by HUD as liquidated damages.
    (c) Pursuant to 24 CFR Section 27.20, the defaulting mortgagor, or any principal, successor, affiliate, or assignee thereof, on the multifamily mortgage being foreclosed, shall not be eligible to bid on, or otherwise acquire, the property being foreclosed by HUD under this subpart or any other provision of law.  A "principal" and an "affiliate" are defined at 2 CFR 180.995 and 180.905, respectively.
11. AS-IS SALE; NO REPRESENTATIONS:
    (a) **High Bidder/Purchaser shall accept the Project "as is." HUD makes no representations or warranties concerning the physical condition of the Project. In addition, HUD does not represent or warrant the number and occupancy of revenue producing units, or any factor bearing upon the value of the Project.**
    (b) High Bidder/Purchaser acknowledges that the purchase price set forth in this Acknowledgment by Bidder is based on its own independent evaluation of the Project and not upon any representations by HUD.  A bidder's failure to inspect, or to be fully informed as to any factor bearing upon the value of the Project,

shall not affect the liabilities, obligations or duties of HUD, nor be a basis for termination of this sale or for the return of the Earnest Money Deposit and/or Extension Fees paid.

12. RISK OF LOSS AND RIGHTS OF RESCISSION: In the event of any substantial damage to the Project prior to Closing by any cause including, but not limited to, fire, flood, earthquake, tornado and significant vandalism, HUD, in its sole discretion, may negotiate with the High Bidder/Purchaser for a reduction in the sales price corresponding to the estimated amount of damages. Such amount shall be added to the Post-Closing Repair Requirements, Form HUD – 9552, included in the Invitation. If HUD fails to negotiate a sales price reduction or if HUD and the Purchaser are unable to agree on the amount by which the purchase price should be reduced or on the amendment to the repair requirements, Purchaser may withdraw the bid. In such case, HUD will return the Earnest Money Deposit and any Extension Fees paid, *unless* there is cause to retain the Earnest Money Deposit based on breach of the Invitation and/or this Acknowledgement by Bidder.

13. PRORATIONS:

   (a) High Bidder/Purchaser is responsible for paying all outstanding assessments and utility bills including, but not limited to, water/sewer, gas and electric which are not extinguished by the foreclosure. These costs will not be prorated. However, if Extension Fees were paid and if the sale closes prior to the expiration of an extension period, a prorated amount of the Extension Fees, for the unused portion of the extension period, shall be credited toward the amount due from High Bidder/Purchaser at Closing. The High Bidder/Purchaser will be responsible for expenses incurred by the Project after Closing. *Bidders are required to determine outstanding expenses/assessments/liens as part of its due diligence and take those outstanding expenses into consideration when submitting bids.*

   (b) The High Bidder/Purchaser is responsible for paying in full all taxes that come due after Closing. Taxes paid by the Purchaser after the Closing date will not be prorated, even if those taxes are for a period prior to Closing.

14. SECURITY DEPOSITS:

   ☒ Notwithstanding State or local law, the Purchaser will receive only those security deposits which are on hand at the Project on the date of Closing. The Purchaser will assume all liability under State and local law with respect to security deposits.

15. LIMITATION OF LIABILITY: In no event shall HUD's liability exceed the portion of the purchase price that has been paid to HUD and/or the Foreclosure Commissioner.

16. ANTI-COLLUSION CERTIFICATION:

   (a) The High Bidder certifies:

       (i) The bid price in this offer has been arrived at independently, without (for the purposes of restricting competition) any consultation, communication, or agreement with any other bidder relating to:
          a.   the bid price;
          b.   the intention to submit a bid price; or
          c.   the methods or factors used in calculating the bid price offered;

       (ii) The bid price in this offer has not been and will not be knowingly disclosed by the High Bidder, directly or indirectly, to any other bidder or competitor before or during the actual time of the bid event, unless otherwise required by law; and

       (iii) No attempt has been made or will be made by the High Bidder to induce any other bidder to submit or not submit a bid for the purpose of restricting competition.

   (b) If written bids were submitted, each signature on the offer is considered to be certification by the signatory that the signatory:

       (i) Is the person in the High Bidder's organization responsible for determining the bid price and that the signatory has not participated and will not participate in any action contrary to paragraph (a) above; or

       (ii) Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate, in any action contrary to paragraph (a), above;

       Name:                _____

       Title:               _____
       Organization responsible
       for determining price _____

          a.   As an authorized agent, certifies that the principals named above have not participated, and will not participate, in any action contrary to paragraph (a) above; and
          b.   As an authorized agent, has not personally participated, and will not participate, in any action contrary to paragraph (a) above.

17. **FAILURE TO COMPLY: Upon the failure or refusal of the High Bidder to comply with any of the requirements listed above or elsewhere in this Invitation, HUD may declare the High Bidder ineligible to purchase the Project. In such case High Bidder shall forfeit the Earnest Money Deposit and any Extension Fees paid.**

   **HUD reserves the right to review and approve or reject the proposed project management.** If HUD determines that the High Bidder is not qualified to self-manage the Project, HUD, in its sole discretion, may either reject the High Bidder's bid or require the High Bidder to obtain the services of a property management firm satisfactory to HUD. If HUD chooses the latter, the High Bidder must provide HUD with evidence that a qualified property management firm has been retained. If High Bidder does not meet this obligation, HUD

reserves the right to reject the bid and retain the High Bidder's Earnest Money Deposit and any Extension Fees paid.

18. SEVERABILITY: If for any reason one or more of the provisions contained in the Invitation, including this Acknowledgment by Bidder, the Use Agreement, or any other attachments or exhibits thereto, shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision(s) of the Invitation, but the Invitation shall be construed as if such invalid, illegal or unenforceable provision(s) had never been included therein.

19. ADDITIONAL FORMS AND STATEMENTS: All forms and instruments referred to in this Acknowledgment by Bidder are standard HUD forms and instruments prepared by HUD, used by HUD in the jurisdiction in which the Project is located, and contain any additional covenants and conditions required by the Invitation.

Not later than **ten (10)** Federal business days after oral notification at the foreclosure sale of being the High Bidder, **the High Bidder must demonstrate the ability to meet HUD requirements** for purchase of the Project by submitting the documents checked below to HUD Realty Specialist, Donald Winston– 4AHMLAU, HUD Atlanta MFPD Center, Five Points Plaza, 40 Marietta St., Atlanta, GA 30303-2806 or via fax to 404-730-2440.

- ☒ Affirmative Fair Housing Marketing Plan (Form HUD 935.2A)
- ☒ Form HUD- 2530 for Purchasing Entity, if different from bidding entity(See Section 2)
- ☒ Form HUD- 2530 for the Managing Agent, if applicable (See Section 2)
- ☒ Personal Financial and Credit Statement (Form HUD 92417)-for each proposed principal/general partner
- ☒ Management Entity Profile (Form HUD 9832)
- ☒ Management Certification (Form HUD 9839 A or B)
- ☐ Project Owner's/Borrower's Certification (HUD Form 9839 C) – for elderly housing project managed by Administrators only
- ☒ Direct Deposit Signup – Standard form 1199A

## WITHIN FIVE (5) FEDERAL GOVERNMENT BUSINESS DAYS AFTER FORECLOSURE SALE:

- ☒ Bidders Property Management Statements: Please see **"SECTION 4 - POST FORECLOSURE SALE PROCEDURES", "2. QUALIFICATION, ACCEPTANCE, REJECTION OF BID"** of the **"Invitation to Bid"** for detailed instructions on how to comply with this requirement.

By signature below, High Bidder acknowledges and agrees to the terms and requirements of this foreclosure sale. In the case of a bid submitted by an agent or representative of the High Bidder, the signatory attests to be duly authorized to submit the bid on behalf of the High Bidder and to execute this Acknowledgment by Bidder. **WARNING:** It is a crime to knowingly make false statements to the United States in this document or any other document related to this sale. Penalties upon conviction can include a fine or imprisonment. Title 18 U.S. Code, Section 1001 and Section 1010.

Executed by the High Bidder on the 01ˢᵗ day of OCTOBER , 2009 .

Witness:

Typed Name: WALT SPADER

By:

Typed Name: EAH MIN HOLDING LLC.

Address: 587 Beck ST.

City, ST Zip: Bronx, NY 10455

Phone No. with Area Code: (718 402 7353

FORECLOSURE SALE USE AGREEMENT

The High Bidder acknowledges the receipt of the Use Agreement applicable to this Project's sale and the inclusion of the following Riders in that Use Agreement:

☒ Affordability of Units
☒ Post-Closing Repair Escrow Requirements
☒ Relocation
☒ Asbestos Hazards
☒ Lead-Based Paint Hazards
☒ Historic Preservation
☒ Reserve Account
☒ Project-Based Section 8 Assistance

The Use Agreement, with the above noted Riders, is to be incorporated into and recorded as part of the Deed.

High Bidder acknowledges that this Rider is incorporated into and is a part of the Terms and Requirements of Foreclosure Sale - Acknowledgment by Bidder
Bidder

Acknowledgment by Bidder                    5